RECEIVED

SEP 1 2 2012 *cyʊ̃*

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| GARRY TOUPS, ET AL. | CIVIL ACTION NO.: 11-1559 |
| VERSUS | JUDGE DOHERTY |
| MORENO GROUP, LLC, ET AL. | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Plaintiffs Garry and Michele Toups filed the instant action asserting ERISA and state law

claims against Moreno Group, LLC ("Moreno") (Michele Toups's employer and the "Plan

Administrator" of the Moreno Plan), Southern Benefit Services ("SBS") (the "Claims Administrator"

of the Moreno employee benefit plan), and Hines & Associates ("Hines") (a company that contracted

with Moreno Group to provide utilization review and management services to Moreno, and which

performed medical necessity review for services and treatment to Moreno Group).  Specifically, the

plaintiffs allege claims for "breach of contract, arbitrary and capricious denial of an insurance claims,

and/or violation of relevant ERISA statutes,"[1] as well as a violation of Article 1997 of the Louisiana

Civil Code.[2]  The plaintiffs allege defendants "are liable to Plaintiffs for all damages, foreseeable

---

[1] Specifically, the plaintiffs allege the defendants "have refused to fairly adjust this claim, pay for damages due under the contract, or provide reasonable explanations for its actions," or alternatively, "have acted negligently, and/or breached their fiduciary duty to Plaintiffs, and have caused the Plaintiffs to detrimentally rely upon the Defendants' representations, in the handling of Plaintiffs' claim by failing to follow proper procedures in evaluating and adjusting the Plaintiffs' claim," and have "intentionally refused to honor Plaintiffs' claim in bad faith, arbitrarily and capriciously, and violated their own internal notification processes with regard to notification to the Plaintiffs of the status of their claim."  Plaintiffs also allege the defendants have further breached their duties to plaintiffs for (1) failing to properly train its adjusters; (2) failing to provide its adjusters with proper materials to properly evaluate claims; (3) failing to advise plaintiffs of the claim status in a timely and reasonable manner; and (4) failing to advise plaintiffs of the exclusion in the contract prior to January 2010.  *See* Plaintiff's Petition, Doc. 1, at ¶¶XXXV – XXXXI.

[2] Article 1997 states: "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."

or not, that are a direct consequence of their failure to perform," including, but not limited to, specific and general damages, and attorneys' fees and penalties.

This Court has been presented with a variety of motions by the parties, as follows: (1) Motion for Summary Judgment [Doc. 25] filed by Hines; (2) Motion for Summary Judgment [Doc. 36] filed by plaintiffs Garry and Michele Toups; (3) Motion for Summary Judgment [Doc. 41] filed by SBS; and (4) Motion for Partial Summary Judgment [Doc. 43] filed by plaintiffs Garry and Michele Toups.  All of the motions are opposed [Docs. 32, 40, 45, 46], and Hines has filed a Motion for Leave to File Reply Brief in connection with its summary judgment motion [Doc. 34], which is herein GRANTED.

As an initial matter, this Court notes the majority of the issues presented for resolution in the pending motions are matters that are typically stipulated to by the parties and addressed without incident in the Court's ERISA Case Order , *i.e.*, the application of ERISA, the preemption of all state law claims, and the completeness of the administrative record.  In the instant case, the Court's task is somewhat complicated, because the parties agree on almost none of these things.  This Court will attempt to rule on the presented requests for relief, and, where it cannot rule, provide sufficient guidance so the parties can clarify their briefing and the dispute can be resolved.

## I.    Factual and Procedural Background

Defendant SBS submitted the following undisputed facts:

- Moreno Group, Michele Toups's employer, established an employee benefit plan for the purpose of providing medical benefits to its employees and their dependents ("the Moreno Plan").

- The Moreno Plan is only available to Moreno Group's full-time active employees and their dependents.

- Moreno Group makes contributions to the Moreno Plan; Moreno Group pays a percentage of the contributions to fund the health benefits provided to the plan members.

- The Moreno Group provides its employees with a copy of the Moreno Plan, which includes, *inter alia,* an explanation of key provisions of the plan, a schedule of benefits, eligibility requirements, the source of funding, plan exclusions, and the procedures for submitting a claim for benefits.

- The Moreno Plan states that it will be administered in accordance with the provisions of ERISA and that plan participants have certain rights and protections under ERISA

- SBS is the Moreno Plan's third party administrator or "claims administrator."

- During the enrollment process, SBS provides potential members with an overview of the benefits of the Moreno Plan, and SBS also explains that the Moreno Plan is mostly self-funded by Moreno Group.

- Upon issuing plan ID cards, SBS informs employees of the procedures for submitting a claim for benefits.

- SBS receives, processes, and schedules payments for submitted claims that are compensable according to the Moreno Plan.

- Since Moreno Group is the plan fiduciary, it has the final say in the denial of claims.

- Garry Toups is the husband of Moreno Group employee Michele Toups, and as such, he is a covered person under the Moreno Plan.

- On or about January 22, 2010, Garry Toups suffered a broken leg while operating an offroad dirt bike on a motorcross track in Mississippi.

- According to Mr. Toups, he was making a jump over what is called a "table top" when his foot came off the foot peg and hit the ground.

- Mr. Toups subsequently sought medical treatment for his injuries, and he filed a claim under the Moreno Plan for payment of expenses associated with this treatment.

- Because orthopaedic services where involved, SBS sent the plaintiffs a subrogation agreement in order to gather more information about the incident and to determine if Mr. Toups's medical treatment was covered under the Moreno Plan.

- In response, Mr. Toups stated he was riding a dirt bike, jumped a hill, and his foot

came off the bike and hit the ground.

- Since the first response was not signed by Mr. Toups, SBS then sent another subrogation agreement to the plaintiffs.

- In the second response, Mr. Toups provided a letter to SBS in which he stated that he was riding a dirt bike on a motorcross track in Mississippi and making a jump over a "table top" when his foot hit the ground.

- Upon learning that Mr. Toups had been injured in an off-road dirt bike incident while attempting a jump over a "table top," SBS and Moreno Group denied Mr. Toups's claim for medical benefits based upon the "Hazardous Hobby or Activity" exclusion contained in the Moreno Plan.

- The Moreno Plan defines "Hazardous Hobby or Activity" as " . . . an activity which is characterized by constant threat of danger or risk of bodily injury. Examples of hazardous hobbies or activities are skydiving, auto racing, hang gliding, jet ski operating or bungee jumping."

Defendant Hines submitted the following undisputed facts:

- Hines entered into a Service Agreement ("Agreement") with Moreno effective December 1, 2008.

- Pursuant to the Agreement between Hines and Moreno, Hines provided utilization review and management services to the Moreno Plan.

- According to the Agreement, Moreno is charged with interpreting the Moreno Plan's coverage provisions and with paying health care claims.

- Pursuant to the Agreement, Hines performed medical necessity review for services and treatment recommended for Moreno Plan member Garry Toups ("Toups"), for services and treatment that were associated with the injuries Toups received in a motorcycle accident.

- On January 26, 2010, Hines sent correspondence to Toups, indicating that it recommended an original hospital confinement of two (2) days. This correspondence further indicated that Toups could assume his entire confinement was certified, unless he received notification from Hines of a non-certification decision.

- On January 28, 2010, Hines sent correspondence to Toups, indicating that it had certified one (1) skilled nursing visit and one (1) skilled physical therapy visit.
- On January 29, 2010, Hines sent correspondence to Toups, indicating approval of

-4-

additional nursing and physical therapy visits.

- On February 1, 2010, Hines sent correspondence to Toups, notifying him of approval of nine (9) additional nursing visits, for a total of fourteen (14) visits.

- On March 1, 2010, Hines sent correspondence to Toups, notifying him of approval of eleven (11) additional visits for a total of twenty-five (25) skilled home nursing visits.

- On March 22, 2010, Hines sent correspondence to Toups, indicating that his surgical procedure to be performed on March 26, 2010, had been reviewed and certified.

- On July 7, 2010, Hines sent correspondence to Toups, indicating that the surgical procedure to be performed on July 9, 2010, had been reviewed and certified.

- On April 20, 2010, Hines sent correspondence to Toups, indicating that it was certifying the purchase of durable medical equipment for his use.

- On each correspondence that Hines sent to Toups certifying medical treatment or goods, Toups was informed that certification of medical necessity did not guarantee coverage under a health plan, as follows:

    *This certification is not a guarantee that benefits will be paid under the health care plan. All benefit determinations are subject to eligibility at the time of service and all terms and provisions of the plan document or policy. Please contact the claim payor directly to verify benefits, especially as they relate to eligibility;, possible out-of-network penalties, off-label medication used, off label use of devices, investigational treatment, participation in Phase I, II or III Clinical Trials, waiver of specific exclusions or pre-existing clauses in the plan.*

- Hines never indicated to either Michele Toups or Garry Toups that certification of medical necessity for any medical treatment, service, or product was a guaranty that the Plan would ultimately pay for that treatment, service, or product.

The plaintiffs argue that after Hines certified certain medical services and products, the "defendants initially paid some of Garry's medical expenses." However, plaintiffs argue "defendants" unilaterally and retroactively excluded Garry's injury from coverage.

Plaintiffs filed suit on or around July 22, 2011 in the Fifteenth Judicial District Court for the

Parish of Lafayette, Louisiana.  Defendant Moreno Group removed the matter to this Court on or around August 25, 2011.  The subject motions were filed thereafter and are now considered ripe for review.

## II.    Law and Analysis

### A.    Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. Proc. 56(a).   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Proc. 56(c). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may give an opportunity to properly support or address the fact; consider the fact undisputed for purposes of the motion; grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or issue any other appropriate order.  Fed. R. Civ. Proc. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618

(5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

This Court notes, effective December 1, 2010, Rule 56 was amended. The amended Rule 56 contains no substantive change to the summary judgment standard. Summary judgment remains appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court must view all evidence in a light most favorable to the non-movant. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). However, in arguing that a genuine issue of material fact exists that precludes summary judgment, the non-movant must identify specific evidence in the record to support its position. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994). The non-movant cannot preclude summary judgment by raising "some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (internal citations and quotation marks omitted).

The Supreme Court has stated:

> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that

-7-

general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little*, 37 F.3d at 1075.

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.*  To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

**B.    Plaintiff's Motion for Partial Summary Judgment [Doc. 36]**

In this motion, plaintiffs seek a ruling "that the contract between the Plaintiffs and

Defendant(s) is not governed by ERISA."[3]  The motion is opposed by Moreno Group, SBS, and Hines, arguing ERISA governs "the contract."

As an initial matter, it is unclear to this Court to what "contract" the plaintiffs refer in their motion, and the memorandum the plaintiffs filed in connection with their motion does not shed light on the issue.  Plaintiffs argue that in its answer to the plaintiffs' state court petition, Moreno "injects a conclusory statement of the applicability of ERISA to the instant dispute," but "pleads no facts that support this affirmative defense."  Therefore, plaintiffs argue they are entitled to summary judgment "in their favor in the form of a ruling that ERISA does not govern the contract at issue in this case."  Again, plaintiffs do not specifically indicate to what "contract" they are referring, nor do plaintiffs attach a copy of that contract to their motion.[4]

Notwithstanding the plaintiffs' failure to specify to which "contract" they are referring in their motion, in response to plaintiffs' motion, Moreno, SBS, and Hines attach a document entitled "Moreno Group LLC Plan Document and Summary Plan Description for Moreno Group, LLC PPO Employee Benefit Plan, effective January 1, 2009" ("Plan Document"), evidencing the defendants' belief that plaintiffs are arguing the applicability of ERISA to the Moreno Plan.

In addition to opposing the plaintiffs' motion on the applicability of ERISA – to whatever "contract" plaintiffs are referring – defendant SBS has filed its own motion for summary judgment,

---

[3] This Court concludes the issue of whether ERISA governs the employee benefit plan at issue is properly addressed via a summary judgment motion.  In the ERISA Case Order issued by this Court on January 26, 2012 [Doc. 24], the Court ordered that the parties file either a stipulation that ERISA governs the plan, or a "summary judgment motion presenting the issue for the court's determination."

[4] There are at least two documents which might be construed as "contracts" in the instant case.  The first is the Moreno Plan Documents, which set forth the details and parameters of the Moreno Group's employee benefit plan, and the second is the agreement between Moreno Group and Hines, the Plan's utilization review agent.

arguing, *inter alia*, ERISA "governs ***the claims*** involved in this lawsuit, and as such, ERISA preempts all Louisiana state law claims related to the employee benefit plan at issue."[5]

Because it appears the plaintiffs and SBS have filed cross-motions for summary judgment on the issue of the applicability of ERISA – to either "the Moreno Plan" or "the claims at issue" in this case – and because such a determination will affect all other motions filed in the case, the Court will consider that issue first.

To be ERISA-qualified, a plan must: (1) exist; (2) fall outside the Department of Labor safe-harbor provision; and (3) satisfy the primary elements of an ERISA "employee benefit plan," that is, establishment or maintenance by an employer intending to benefit employees. *See, e.g., Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir.1993); *Peace v. American General Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006).   The Fifth Circuit has stated: "If any part of the inquiry is answered in the negative, the submission is not an ERISA plan. Our analysis is informed by reference to ERISA itself, including germane indications of congressional intent; and, to the extent Congress has failed to state its intention on the precise issue in question, we refer to permissible interpretations by the agency charged with administering the statute – the Department of Labor." *Meredith*, 980 F.2d at 355.

In *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir. 1989), the Fifth Circuit stated:

> As the Supreme Court recently declared in *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), common-law contract and tort claims based upon laws of general application, that is, not specifically related to insurance FN2 or employee severance FN3 or discrimination,FN4 are preempted by ERISA, rather than section 301 of the NLRA, to the extent that they relate to an employee benefit plan. Moreover, when beneficiaries bring such claims to recover benefits

---

[5] *See* SBS's Motion for Summary Judgment, Doc. 41, pg. 1 (emphasis added).

from a covered plan, those claims fall under ERISA's 29 U.S.C. § 1132(a)(1)(B), FN5 which provides an exclusive federal cause of action for the resolution of such claims. See Shaw. Thus, the Court also held that in addition to preempting the state-law claims, ERISA's preemptive and civil enforcement provisions operate to "recharacterize" such claims into actions arising under federal law.

See also Gahn v. Allstate Life Ins. Co., 926 F.2d 1449, 1453 (5th Cir. 1991) ("ERISA preempts "all State laws insofar as they ... relate to any employee benefit plan[;] . . . The net of section 514(a) is large enough to capture any law that has a connection with such a plan."), citing Shaw v. Delta Air Lines, 463 U.S. 85, 97-98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Thus, as defendants argue, if the Moreno Plan is a covered plan, all claims related thereto are preempted by ERISA and must be resolved in accordance therein.

ERISA defines an "employee welfare benefit plan" as follows:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. §1002(1).

This Court now considers the three factors set forth above to determine whether the Moreno Plan is an employee benefit plan governed by ERISA.

### 1.    Is the Moreno Plan an employee benefit plan under ERISA

According to the Supreme Court in Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S 1, 9, 11-12, 107 S.Ct. 2211 (1987), to qualify as a benefit plan under ERISA, an employer must "establish

a uniform administrative scheme" to effectuate a "host of [employee benefit] obligations." Id. at 9, 107 S.Ct. 2211.  Only when there is an "ongoing administrative program to meet the employer's obligation" does a plan exist under ERISA.  *Id.* at 11, 107 S.Ct. 2211. Where no such administrative scheme exists, preemption is nonsensical because there would be nothing to regulate.  *Id.* at 16, 107 S.Ct. 2211.  The Fifth Circuit has noted "[i]n determining whether a plan, fund, or program . . . . is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits."  *Meredith*, 980 F.2d at 355.

In the instant case, Moreno argues it provides its employees with a copy of the Moreno Plan documents, which contain, *inter alia*, an explanation of key provisions of the Plan,[6] including a schedule of benefits, eligibility requirements, the source of funding, and the procedures for submitting a claim for benefits.  The Moreno Plan also contains a provision stating the Plan will be administered according to the provisions of ERISA, explains the duties of the Plan Administrator, and explains that plan participants have certain rights and protections under ERISA.[7]

Beyond the bare assertions in their motion, the plaintiffs provide no evidence or argument that the Moreno Plan does *not* constitute an employee benefit plan under ERISA.  Therefore, after review of the record, this Court concludes the plaintiffs have not carried their burden of showing the Moreno Plan does not constitute an employee benefits plan under ERISA, while SBS has carried its

---

[6] *See* document entitled "Moreno Group LLC Plan Document and Summary Plan Descripotin for Moreno Group, LLC PPO Employee Benefit Plan, effective January 1, 2009," ("Plan Document"): attached as Exhibit A to Defndants' Joint Resposne to ERISA Case Order, Doc. 35, at D-0005 ("Schedule of Benefits"); D-0012 ("Eligibility, Funding, Effective Date and Termination Provisions"); D-0013 ("Funding"); and D-0046 ("How to Submit a Claim").

[7] *See* Plan Document at D-0062 and D-0065.

burden on this point making a prima *facia case* on the point, as plaintiffs offer no relevant argument or evidence to the contrary.  Accordingly, this Court finds the plan to be one which might be subject to being governed by ERISA.

### 2. The Moreno Plan is not subject to the Department of Labor's "Safe Harbor Provisions"

The second prong for this Court to consider is whether the Moreno Plan falls within the safe-harbor provision of the Department of Labor, which states:

> (j) Certain group or group-type insurance programs.  For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> > (1) No contributions are made by an employer or employee organization;
> >
> > (2) Participation the program is completely voluntary for employees or members;
> >
> > (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> >
> > (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

If a plan meets all four criteria, it is exempt from ERISA's coverage.  *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1452 (5th Cir. 1991).  In the instant case, the employer, Moreno Group, makes contributions to the Plan; it pays a percentage of the contributions to fund the health benefits provided to the plan members; the Plan is only available to Moreno Groups's full-time active employees and their dependents; and the Moreno Group does not merely serve as a conduit for an

insurance company.  Moreover, the Moreno Plan is not insured; it is self-funded.

The plaintiffs have offered no argument or evidence in response to Moreno's argument and evidence on this point.  Considering the foregoing, this Court concludes plaintiffs have failed to carry their burden on this point, while SBS has carried its burden of showing the Moreno Plan does not qualify for exemption from ERISA under the safe-harbor provision.

### 3.     The Moreno Plan was established by Moreno Group to benefit its employees

The third factor to be considered by this Court is whether the Moreno Plan was established or is maintained by the Moreno Group to benefit its employees.  In *Gahn*, 926 F.2d at 1452, the Fifth Circuit reasoned that in making the determination as to whether an employer "established or maintained" an employee benefit plan, "the court should [focus] on the employer ... and [its] involvement with the administration of the plan."  Thus, if an employer does no more than purchase insurance for its employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, the employer has not established an ERISA plan.  *Kidder*, 932 F.2d at 353; *Memorial Hospital*, 904 F.2d at 242.  The Fifth Circuit has stated:

> [c]onsidering the history, structure and purposes of ERISA, we cannot believe that that Act regulates bare purchases of health insurance where . . . the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits.

*Taggart Corp. v. Life and Health Benefits Admin., Inc.*, 617 F.2d 1208, 1211 (5th Cir.1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).  Ergo, in order for a plan to be "established and maintained" by an employer for the benefit of its employees, the plan, fund, or program requires some control, administration, or responsibility on the part of the employer.

In the instant case, the Plan Document explains that the employer, Moreno Group, does not

-14-

merely purchase health care insurance for its employees; rather, Moreno Group is the Plan sponsor and Plan Administrator, and, in this capacity, has promulgated a system for its employees to obtain coverage, make claims, and obtain benefits under the Plan.  The plaintiffs have not disputed this fact with either evidence or argument.  Considering the foregoing, the Court concludes the plaintiffs have failed to sustain their burden on this point, while SBS has carried its burden of showing the Moreno Plan was established and is maintained by the Moreno Group to benefit its employees.

For the foregoing reasons, this Court concludes plaintiffs fail to meet their burden to obtain the relief requested, *i.e.*, a ruling that the Moreno Plan is not an employee benefit plan governed by ERISA.  As such, the plaintiff's motion seeking a ruling that the Plan is not governed by ERISA is DENIED.[8]

However, the Court cannot grant the relief requested by SBS, *i.e.*, a ruling that "ERISA governs ***all claims*** involved in this lawsuit," because SBS has not met its burden to show it is entitled to that relief.  Indeed, no party has asked this Court for a ruling that ERISA applies ***to the Moreno Plan***, and the distinction is quite important.  Plaintiffs have asked for a ruling that ERISA does NOT apply to the Moreno Plan, while SBS has asked for a ruling that ERISA applies to ***all of the claims*** pled in this matter, which, for reasons that will be further explained later in this Ruling,

---

[8] All parties are put on notice – particularly the plaintiffs – of the impact this ruling has on the plaintiffs' argument in their briefs concerning discovery.  As a general matter, discovery may not be conducted regarding the factual basis of the plaintiff's medical claim because this court's review is constrained to the evidence in the administrative record as reviewed by the plan administrator, and the administrator's decision can only be overturned if the court concludes that it constitutes an abuse of discretion. *Schadler*, 147 F 3d at 394; *Wildbur*, 974 F.2d at 639; see also *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F. 2d 98, 102 (5th Cir.1993).  To date, evidence which has been recognized to relate to the administrator's interpretation of plan terms includes evidence of the bad faith of plan trustees, *Kennedy v. Electricians Pension Plan*, 954 F. 2d 1116, 1123-24 (5th Cir. 1992), evidence of a plan administrator's potential conflict of interest, *Vega v. National Life Insurance Services, Inc.,* 145 F.3d 673,680 (5th Cir.1998), and evidence concerning how an administrator has interpreted terms of the plan in other instances,*Id at 299.*  Likewise, expert evidence which assists the court in understanding the medical terminology or practice related to a claim is admissible, and would thus be a proper subject of discovery.*Id*  at 299.

this Court cannot grant at this time.  Based on what has been presented to this Court, all this Court

can rule at this time is that the evidence presented by SBS, and uncontroverted by plaintiffs, is that

ERISA applies to the Moreno Plan.[9]

### C.   Motion for Summary Judgment filed by SBS [Doc. 41] and Motion for Partial Summary Judgment filed by plaintiffs [Doc. 43]

In this motion, SBS seeks a dismissal of "plaintiffs' claims against it with full prejudice" on

grounds (1) the administrative record previously submitted by SBS in response to the Court's ERISA

Case Order is complete; (2) ERISA governs the claims involved in this lawsuit, and as such, ERISA

preempts all Louisiana state law claims related to the employee benefit plan at issue; and (3) the

Moreno Plan vests the "<u>claim administrator</u>" with discretionary authority to determine eligibility for

benefits to construe and interpret the terms of the plan, and the "<u>claim administrator</u>" did not abuse

its discretion in this matter.

The plaintiffs have also filed a motion for partial summary judgment, seeking a ruling "that

the <u>Plan Administrator</u> abused its discretion in denying medical benefits to Garry Toups."  Thus,

with respect to the critical issue before this Court, *i.e.*, whether benefits were properly or improperly

denied, the parties have framed the issue in two distinct manners: SBS argues the "<u>claim</u>

<u>administrator</u>" did not abuse its discretion in denying benefits, while plaintiffs argue the  <u>Plan</u>

<u>Administrator</u> did abuse its discretion, all as more fully discussed below.  Because plaintiffs and SBS

have essentially filed cross-motions for summary judgment on the issue, the Court will address the

---

[9] To the extent this ruling could be characterized as a *sua sponte* grant of summary judgment in favor of Moreno – on grounds not actually requested in Moreno's motion – this Court finds the foregoing is appropriate without prior notice to the parties, because the specific issue of applicability of ERISA to the Plan at issue was raised in plaintiff's motion, and plaintiff was therefore on notice that the issue was being considered by the Court. *See, e.g., Albanil v. Coast 2 Coast, Inc.*, 444 Fed. Appx. 788 (5th Cir. 20110 (unpublished), *citing Jones v., Union Pacific R.Co.*, 302 F.3d 735 (7th Cir. 2002)  (suggesting that plaintiff is not deprived of opportunity to present evidence when the plaintiff is the one that moves for summary judgment on an issue).

issue from the standpoint of SBS's motion and, in doing so, will weave in and address the plaintiffs' arguments.

### 1.    The administrative record is complete

On March 26, 2012, in accordance with this Court's ERISA Case Order dated January 26, 2012, SBS and Moreno Group timely filed a copy of the administrative record into the record of this Court and provided same to the plaintiffs [Doc. 26].  On April 9, 2012, plaintiffs filed a Response to the ERISA Case Order in which they state "[p]laintiffs have no reason to believe that the administrative record is incomplete" [Doc. 39].  On March 26, 2012, Hines filed a Response to the ERISA Case Order, in which it states "[a]s the utilization review agent, Hines is not privy to the entire administrative record; Hines, however, has no objection to the administrative record as presented by the co-defendants, Moreno and SBS."  [Doc. 37].

Considering the foregoing, this Court concludes there are no disputed facts concerning the completeness of the administrative record in this matter, and this Court concludes the record filed is the complete administrative record for purposes of the benefits determination made in this case.

### 2.    Does the Moreno Plan vest SBS and the Moreno Group with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the Plan?

In its motion, SBS argues the Moreno Plan vests the "claim administrator" with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the plan, and the "claim administrator" did not abuse its discretion in this matter.   However, in its memorandum in support of its motion, SBS argues both the Moreno Group and SBS are vested with discretionary authority to interpret the Moreno Plan.

The Moreno Plan Document identifies the "Claims Administrator" for the Moreno Plan as

SBS.[10]   The Moreno Plan Document further states the following:

> **Moreno Group, LLC Employee Benefit Plan is the benefit plan of the Moreno Group, LLC, the Plan Administrator, also called the Plan Sponsor.**  It is to be administered by the Plan Administrator in accordance with the provisions of ERISA. An individual may be appointed by Moreno Group, LLC to be Plan Administrator and serve at the convenience of the Employer.  If the Plan Administrator resigns, dies or is otherwise removed from the position, Moreno Group, LLC shall appoint a new Plan Administrator as soon as reasonably possible.
>
> The Plan Administrator shall administer this Plan in accordance with its terms and establish its policies, interpretations, practices, and procedures.  **It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the plan.**  The decisions of the Plan Administrator will be final and binding on all interested parties.[11]

Despite the clear language in the Plan Document that the Moreno Group is the Plan Administrator for the Moreno Plan, in its motion, SBS argues both *SBS and the Moreno Group* are vested with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the Moreno Plan, even though SBS acknowledges only the Moreno Group is the Plan Administrator.  Complicating the matter further is SBS's joint response to the ERISA Case Order (with Moreno Group), in which SBS  acknowledges that ***Moreno Group*** is the Plan Administrator

---

[10] *See* section of Plan Document entitled "General Plan Information," which states:

> Claims Administrator:
> Southern Benefits Services, LLC
> 2400 Veterans Blvd Suite 140
> Kenner, Louisiana   70062
> (504) 323-7500

at D-0067.

[11] *See* Plan Document at D-0062 (emphasis added).

and,is, therefore vested with discretionary authority to interpret the plan.  It is unclear to the Court

why, after acknowledging the Moreno Group is solely vested with discretionary authority in its

Response to the ERISA Case Order, SBS would now argue in its memorandum that both Moreno

Group and SBS were vested with discretionary authority to interpret the Plan.

Hines does not address the matter of discretionary authority in its Response to the ERISA

Case Order, however, on April 9, 2012, the plaintiffs filed their Response which states:

> Plaintiffs contend that their claims are not governed by ERISA, and have previously
> filed a summary judgment in support of this contention; however, to the extent this
> Honorable Court determines that ERISA governs part or all of the Plaintiff's claims,
> Plaintiffs aree that the language cited by Defendants regarding the intent to vest
> discretion with the Plan Administrator is accurately quoted from the body of the
> Plan.[12]

Notwithstanding the assertion of SBS in its motion, after this Court's review of the Plan

Documents, the Court concludes SBS's assertion that both SBS and the Moreno Group are vested

with discretionary authority to interpret the terms of the Plan does not appear to be accurate.  Indeed,

the Plan Documents expressly state the ***Plan Administrator***, also called the Plan Sponsor, is ***the***

***Moreno Group***.  Additionally, according to its express terms, the Plan Document grants "the

maximum legal discretionary authority to construe and interpret the  terms and provisions of the

Plan" ***to the Plan Administrator, i.e., Moreno Group***.  The Plan Documents say nothing about

granting discretionary authority to the "Claims Administrator," in this case, SBS.

Indeed, the section of the Moreno Plan Documents addressing the "claims administrator"

appears in the listing of duties of the Plan Administrator, one of which is "[t]o appoint a Claims

Administrator to pay claims."  However, the Moreno Plan Document also states "[a] Claims

---

[12] *See* Plaintiff's response to ERISA Case Order, Doc. 39 (emphasis added).

Administrator is not a fiduciary under the Plan by virtue of paying claims in accordance with the Plan's rules as established by the Plan Administrator."[13]

Considering the foregoing, this Court concludes the Moreno Plan vests only ***the Moreno Group*** (***the Plan Administrator*** ) with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the Moreno Plan.  Therefore, SBS has not carried its burden of showing it is entitled to a ruling that it was vested with discretionary authority to interpret the Merino Plan; at this juncture, this Court makes no determination as to merits, rather notes SBS has failed to carry its burden to establish the relief requested.  Therefore, this portion of SBS's motion is DENIED.

### 3.    Applicability of ERISA and preemption

SBS also argues ERISA governs "the claims involved in this lawsuit."  To support this argument, SBS primarily refers to its opposition to the motion for summary judgment filed by plaintiffs, which argues ERISA does not govern the Moreno Plan, and which this Court has denied. Additionally, SBS combines this section of its motion with its argument that ERISA preempts "all state law claims" in this matter and focuses its argument on the preemption aspect.  In response, plaintiffs do not offer any argument or evidence to this aspect of SBS's motion, but merely "adopt the facts, argument and law put forth in their Motion for Summary Judgment."

For the following reasons, it is unclear to this Court whether ERISA governs *all of the claims* alleged against all of the parties in this lawsuit.  While it appears ERISA does, indeed, apply to any

---

[13] The foregoing raises questions for this Court concerning the actual roles of the defendant parties in the benefits determination that was made in this case.  Until this Court has a clearer picture of each defendant's role in the profess, the Court cannot conclude whether ERISA governs the specific claims of the plaintiffs against each specific defendant, particularly where the defendants themselves have given conflicting information about the responsibilities of the defendants.

claims asserted by the plaintiffs that seek recovery of benefits under the terms and conditions of the Moreno Plan – and would, therefore, appear to apply to claims asserted against the Plan Administrator, the Moreno Group, for failure to pay benefits – it is not clear whether ERISA applies to the claims asserted against SBS and/or Hines.

Indeed, as alluded to earlier in this Ruling, the Court cannot determine whether ERISA governs the claims against the defendants until it knows what those claims are. The Court also cannot determine whether ERISA applies to a particular claim until the Court knows and understands the roles the different defendants played in the benefits determination process. For example, it is unclear to this Court what role SBS actually played in making benefits determinations in this case and, whether, despite the language in the Moreno Plan Documents, SBS was actually a fiduciary in the context of this case, which would appear to have some bearing on whether the claims against SBS would be governed by ERISA. Similarly, with respect to Hines, it is unclear whether, and to what extent, ERISA applies to the actions of a utilization review agents in the context of this case, where medical services were certified, benefits were initially paid, and subsequently, benefits were denied. Hines has not sufficiently briefed this issue for the Court. Specifically, as with SBS, it is unclear to this Court whether Hines was involved at all in the benefits determinations process and could, therefore, be legally considered to be a fiduciary pursuant to the Moreno Plan Documents. See *Estate of Bratton v. National Union Fire Insurance Company of Pittsburgh, PA*, 215 F.3d 516, 521-22 (5th Cir. 2000) ("ERISA provides federal courts with jurisdiction to review benefit determinations by *fiduciaries* or plan administrators.").[14]

---

[14] Also, with respect to Hines, the issue begs the question: If ERISA does not apply at all to the claims asserted against Hines, can the state law claims against Hines be preempted by ERISA? In this Court's view, state law claims against Hines would only be preempted if ERISA applies to the claims in the first place.

In the instant case, the plaintiffs do not separate their claims out against each defendant. Rather, plaintiffs simply assert that, acting in concert, *the defendants* breached the "contract" at issue (again, without specifying which contract), were negligent, and denied Garry Toups benefits.  Indeed, in its motion for summary judgment on the ultimate issue presented – *i.e.*, whether benefits were properly or improperly denied – plaintiffs delineate the Moreno Group as the Plan Administrator, but argue the specific "Plan rules and regulations were all breached or ignored by the ***Defendants in making the coverage determination in this case***."[15]

Until the claims against the various parties have been clarified, this Court cannot determine what law applies to those claims and whether any of the remaining pending motions have merit. Now that the parties have the benefit of this Court's determination that ERISA applies to the Moreno Plan, the necessary clarifications can be made.[16]

Considering the foregoing, SBS's motion for summary judgment [Doc. 41] is GRANTED

---

[15] *See* memorandum in support of plaintiffs' motion for summary judgment, Doc. 43-3, at p. 3 (emphasis added).

[16] With respect to the issue of preemption, the petition shows the plaintiffs have asserted a variety of claims under Louisiana law, including claims for breach of contract, breach of fiduciary duty, negligence, and violations of Louisiana statutes and codal articles. Plaintiffs seek recovery for damages for past and future medical care, failure to obtain necessary medical care, and damage to their financial situation.

It is well-settled ERISA preempts all state laws insofar as they "relate to any employee benefit plan covered by the Act." *See, e.g., Transitional Hospitals Corp. v. Blue Cross and Blue Shield of Texas, Inc.*, 164 F.3d 952, 954 (5th Cir. 1999). State law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).  The "relate to" language is to be given a "broad yet common-sense meaning and a state law claim only relates to a benefit plan 'if it has a connection with or reference to' the ERISA plan." *Orthopaedic Surgery Associates of San Antonio, P.A., v. Prudential Health Care Plan*, 147 F.Supp.d 595, 599, *citing Shaw, supra. See also Westbrook v. Beverly Enters.*, 832 F.Supp. 188, 190 (W. D.Tex. 1993), *citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). However, some state laws may affect an ERISA plan in "too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n.21.

However, the Court cannot make a determination as to preemption until it knows whether ERISA governs the claims in the lawsuit.

IN PART and DENIED IN PART.  That portion of SBS' motion requesting a ruling that the administrative record is complete is GRANTED.  However, the portions of the motion seeking rulings that (1) ERISA governs the claims involved in this lawsuit, (2) ERISA preempts all Louisiana state law claims related to the employee benefit plan at issue, (3) the "claim administrator" is vested with discretionary authority to determine eligibility for benefits and construe and interpret the terms of the plan, and (4) the "claim administrator" did not abuse its discretion in this matter, are DENIED.  IT IS FURTHER ORDERED that the plaintiffs' motion for summary judgment seeking a ruling that "the defendants" improperly denied benefits is DENIED for failure of the plaintiffs to carry their burden of showing they are entitled to the relief requested.

### D.    Motion For Summary Judgment filed by Hines & Associates [ Doc. 25]

Hines moves for summary judgment on grounds that, as the contracted utilization review agent of Moreno, Hines had no involvement in or responsibility for the denial of the claim for benefits which is the subject of the plaintiffs' lawsuit.  Therefore, Hines argues it has no liability under ERISA and seeks a ruling of this Court dismissing all of plaintiffs' claims against it with prejudice.  The plaintiffs have alleged both state law claims for breach of contract and negligence against Hines, as well as a breach of fiduciary duty claim and claims arising under ERISA.

In its motion, Hines argues it is a company that specializes in utilization review or management, and, as such, reviews medical files and guidelines for treatment for healthcare payors with which it contracts to determine whether medical services are medically necessary prior to the treatment being provided.  Pursuant to a Services Agreement executed by Hines and Moreno, Hines was retained to perform utilization review for the Moreno Plan.  Hines argues it does not make recommendations regarding whether a claim is a covered benefit under a particular health plan,

pursuant to the express terms of the contract between Moreno and Hines, as follows:

> 2.     Scope of Service.  Hines agrees that for the term of  this Agreement as set forth in Section 3 hereof, it will provide to THE GROUP the SERVICES outlined in Exhibit 2 with respect to medical care proposed for eligible members of THE GROUP and for their eligible dependents (hereinafter collectively referred to as "Covered Persons"), covered under the health benefit programs established and maintained by THE GROUP.  Covered Persons whose primary coverage is to be provided by another health program, Medicare or Workers' Compensation will not be included in the category of Covered Persons for which SERVICES are performed.

> THE GROUP will interpret the benefit plan, maintain a list of eligible employees and dependants, as well as pay the Health Care claims.

> HINES will make recommendations to THE GROUP on the medical necessity and/or appropriateness of Health Care SERVICES provided or proposed to be provided as defined and in accordance with those SERVICES that require precertification as listed on Exhibit 2.  HINES and THE GROUP agree that only THE GROUP will make the final determination as to payment or the denial of payment of any claim and/or authorization for delivery of any Health are SERVICES.[17]

Additionally, Hines argues that in correspondence dated January 26, 2010, January 28, 2010, January 29, 2010, February 1, 2010, March 1, 2010, March 22, 2010, April 20, 2010, and July 7, 2010, it specifically notified the plaintiffs that Hines's certification of medical necessity for certain medical procedures and items did not guarantee benefits would be paid under their health plan.[18]

As an initial matter, the Court notes the Services Agreement between Hines and the Moreno Group governs the rights and obligations as between those parties.  Indeed, the plaintiffs are not a party to the agreement between Hines and the Moreno Group, and thereby, the rights of the plaintiffs

---

[17] *See* Service Agreement executed by Moreno Group and Hines, attached as Exhibit "A" to Hines's motion for summary judgment, Doc. 25.

[18] *See* correspondence from Hines to plaintiffs on the foregoing dates, attached as Exhibits "B" - "I," attached to Hines's motion for summary judgment, Doc. 25.

may not necessarily be constrained by that legal instrument.[19]

Moreover, this Court concludes it does not have sufficient information to determine whether Hines is entitled to the relief it seeks.  First, as alluded to earlier in this Ruling, it is unclear whether ERISA applies to the claims alleged by the plaintiffs against Hines.  Based upon the factual scenario presented in this case, it is unclear to this Court whether Hines is properly considered a fiduciary to the plaintiffs.  If Hines is properly considered a fiduciary, ERISA might well apply to the plaintiffs' claims against Hines.  If ERISA does not apply, it is unclear whether the plaintiffs' state law claims might lie against Hines (for example, if ERISA does not apply at all to the claims asserted against Hines, the preemption of other state law claims against Hines would not appear to be at play, as preemption would appear to be at play only if ERISA applies).

In an attempt to learn more about the relationships between utilization review agents, plan administrators, claims administrators, and plan beneficiaries, this Court found cases discussing the duties of the various entities, however, in its briefing, Hines has not included a discussion of how other courts have treated similar factual scenarios in its motion.[20]  Because of the unique, complex nature of the claims alleged in this case, and because the parties have collectively failed to fully delineate the duties and obligations of the various parties, this Court cannot know at this time whether Hines is entitled to the relief it seeks.

---

[19] For example, taking this matter out of the ERISA context, this Court could envision a scenario whereby the plaintiff has a right of recovery against Hines, which then has a cause of action against the Moreno Group by virtue of its contractual relationship with Moreno Group.

[20] This Court is mindful of *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321 (5th Cir. 1992), in which the Fifth Circuit held ERISA applies to not only claims against ERISA plans, but also to claims against administrators of such plans, including providers of utilization review services.  However, this Court notes the facts of the *Corcoran* case are distinguishable from the facts of the instant case, in that the utilization review service company in *Corcoran* denied the medical necessity of the treatment.  Here, SBS certified the medical necessity of the treatment for some time.  The relevancy of the *Corcoran* and its potential impact on this case has not been addressed by the parties.

Considering the foregoing, IT IS ORDERED that Hines's Motion for Summary Judgment [Doc. 25] is DENIED for failure of Hines to carry its burden to show it is entitled to the relief requested; again this Court makes no substantive ruling, rather finds Hines has failed to carry its burden to show it is due the relief requested.

## III.   Conclusion

For the foregoing reasons,

IT IS ORDERED that plaintiffs' Motion for Summary Judgment [Doc. 36], seeking a ruling that the Moreno Plan is not governed by ERISA, is DENIED.   This Court specifically finds that ERISA applies to the Moreno Plan.

IT IS FURTHER ORDERED that SBS's Motion for Summary Judgment [Doc. 41] is GRANTED IN PART and DENIED IN PART.  That portion of SBS' motion requesting a ruling that the administrative record is complete is GRANTED.  However, the portions of the motion seeking rulings that (1) ERISA governs the claims involved in this lawsuit, (2) ERISA preempts all Louisiana state law claims related to the employee benefit plan at issue, (3) the "claim administrator" is vested with discretionary authority to determine eligibility for benefits and construe and interpret the terms of the plan, and (4) the "claim administrator" did not abuse its discretion in this matter, are DENIED.  IT IS FURTHER ORDERED that the plaintiffs' Motion for Summary Judgment [Doc. 43] is DENIED for failure of the plaintiffs to carry their burden of showing they are entitled to the relief requested.

IT IS FURTHER ORDERED that Hines's Motion for Summary Judgment [Doc. 25] is DENIED for failure of Hines to carry its burden to show it is entitled to the relief requested.

**IT IS FURTHER ORDERED that, on or before October 3, 2012, the plaintiffs shall file**

an outline of all claims pending in this lawsuit in accordance with the Outline Requirements attached to the Memorandum Ruling as Attachment "A."  Defendants are to respond in accordance with the instructions contained in the Outline Requirements attached to the Memorandum Ruling as Attachment "A" on or before October 17, 2012.

Thereafter, should any party wish to re-urge a motion for summary judgment or other dispositive motion, such motion shall be filed no later than October 31, 2012.  Any response to the motion shall be filed on or before November 14, 2012.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____12_____ day of September, 2012.


REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE