RECEIVED

MAR 2 1 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

GARRY TOUPS, ET AL.                    CIVIL ACTION NO.: 11-1559

VERSUS                                 JUDGE DOHERTY

MORENO GROUP, LLC, ET AL.              MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before this Court are the following motions: (1) Hines & Associates' Motion for Summary Judgment Based on Plaintiffs' Outline of Claims [Doc. 56] filed by defendant Hines & Associates ("Hines"); and (2) Defendant Moreno Group's Motion for Summary Judgment Based on Plaintiff's Outline of Claims [Doc. 58] filed by defendant Moreno Group ("Moreno"). Plaintffs oppose the motions [Docs. 62, 63], and both Hines and Moreno have filed Motions for Leave to File Reply Briefs [Docs. 65, 64], which are GRANTED herein.

Plaintiffs Garry and Michele Toups filed the instant action asserting ERISA and state law claims against Moreno Group, LLC ("Moreno"), Southern Benefit Services ("SBS"),[1] and Hines & Associates ("Hines"). In its complaint, the plaintiffs allege claims for "breach of contract, arbitrary and capricious denial of an insurance claims, and/or violation of relevant ERISA statutes,"[2] as well

---

[1] SBS does not presently have a motion pending before the Court.

[2] Specifically, the plaintiffs allege the defendants "have refused to fairly adjust this claim, pay for damages due under the contract, or provide reasonable explanations for its actions," or alternatively, "have acted negligently, and/or breached their fiduciary duty to Plaintiffs, and have caused the Plaintiffs to detrimentally rely upon the Defendants' representations, in the handling of Plaintiffs' claim by failing to follow proper procedures in evaluating and adjusting the Plaintiffs' claim," and have "intentionally refused to honor Plaintiffs' claim in bad faith, arbitrarily and capriciously, and violated their own internal notification processes with regard to notification to the Plaintiffs of the status of their claim." Plaintiffs also allege the defendants have further breached their duties to plaintiffs for (1) failing to properly train its adjusters; (2) failing to provide its adjusters with proper materials to properly evaluate claims; (3) failing to advise plaintiffs of the claim status in a timely and reasonable manner; and (4) failing to advise plaintiffs of the exclusion in the contract prior to January 2010. *See* Plaintiff's Petition, Doc. 1, at ¶¶XXXV – XXXXI.

as a violation of Article 1997 of the Louisiana Civil Code.[3]  The plaintiffs allege defendants "are liable to Plaintiffs for all damages, foreseeable or not, that are a direct consequence of their failure to perform," including, but not limited to, specific and general damages, and attorneys' fees and penalties.

The instant motion represents the second round of briefing in this case.  The first round consisted of several motions filed by the parties, seeking various forms of relief, the majority of which motions could not be granted, primarily because it was not clear to this Court what claims had been pled by the plaintiffs in their complaint.[4]  The only definitive substantive ruling this Court was able to make in the first round of briefing was the ruling that ERISA applies to the employee benefit plan established by Moreno, plaintiff Michele Toups's employer.  The Court then ordered the plaintiffs to file an outline of claims, specifically indicating each claim against each defendant, with particularity, and identifying the source of law for each claim, as well as the remedy requested with respect to each claim.  The plaintiffs were cautioned that "any claim not included in the outline . . . shall be deemed waived and abandoned."[5]

The plaintiffs filed their outline and in this outline, they list only two claims against Moreno:

---

[3] Article 1997 states: "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."

[4] Specifically, the Court was presented with the following motions: (1) Motion for Summary Judgment [Doc. 25] filed by Hines; (2) Motion for Summary Judgment [Doc. 36] filed by plaintiffs Garry and Michele Toups; (3) Motion for Summary Judgment [Doc. 41] filed by SBS; (4) Motion for Partial Summary Judgment [Doc. 43] filed by plaintiffs Garry and Michele Toups.

[5] See Memorandum Ruling, Doc. 48, Exhibit A, which states:

> ANY CLAIM NOT INCLUDED ON THE OUTLINE DESCRIBED HEREIN
> SHALL BE DEEMED WAIVED AND ABANDONED.  HOWEVER, THE
> OUTLINE MAY NOT BE USED AS A TOOL TO EXPAND THE CLAIMS
> IDENTIFIED IN THE COMPLAINT.

(1) breach of contract, and (2) detrimental reliance.  The plaintiffs do not include any claims against Hines in their outline.

Moreno filed the instant motion, arguing plaintiffs have asserted only two claims against it, to wit, the claims for breach of contract and detrimental reliance, and arguing for the dismissal of those claims on grounds of ERISA preemption.  Moreno alternatively argues if this Court must consider the foregoing claims as a "claim" for recovery of benefits under ERISA, the claim should be denied and dismissed on grounds it has no merit under the ERISA abuse of discretion standard.

In its motion, Hines argues the plaintiffs have waived any claims they may have asserted against Hines by failing to include any claims against Hines in their outline.  Alternatively, Hines argues to the extent the plaintiffs assert state law claims for breach of contract and detrimental reliance against Hines, such claims are preempted, and to the extent this Court must consider those claims under ERISA as a claim for recovery of benefits – as discussed below – such claim must be dismissed as Hines is not a plan fiduciary.

The motions are now ripe for consideration, and this Court will consider each motion in turn.

## I.      Factual and Procedural Background

This Court set forth the following factual background, taken from undisputed facts as presented by the parties in previously-filed briefs, in a previous ruling.  As it does not appear from the instant motions that any facts have changed, and in the interests of judicial economy, this Court will refer to the undisputed facts as set forth in its previous ruling, as follows:

- Moreno Group, Michele Toups's employer, established an employee benefit plan for the purpose of providing medical benefits to its employees and their dependents ("the Moreno Plan").

- The Moreno Plan is only available to Moreno Group's full-time active employees and

their dependents.

- Moreno Group makes contributions to the Moreno Plan; Moreno Group pays a percentage of the contributions to fund the health benefits provided to the plan members.

- The Moreno Group provides its employees with a copy of the Moreno Plan, which includes, *inter alia,* an explanation of key provisions of the plan, a schedule of benefits, eligibility requirements, the source of funding, plan exclusions, and the procedures for submitting a claim for benefits.

- The Moreno Plan states that it will be administered in accordance with the provisions of ERISA and that plan participants have certain rights and protections under ERISA

- SBS is the Moreno Plan's third party administrator or "claims administrator."

- During the enrollment process, SBS provides potential members with an overview of the benefits of the Moreno Plan, and SBS also explains that the Moreno Plan is mostly self-funded by Moreno Group.

- Upon issuing plan ID cards, SBS informs employees of the procedures for submitting a claim for benefits.

- SBS receives, processes, and schedules payments for submitted claims that are compensable according to the Moreno Plan.

- Since Moreno Group is the plan fiduciary, it has the final say in the denial of claims.

- Garry Toups is the husband of Moreno Group employee Michele Toups, and as such, he is a covered person under the Moreno Plan.

- On or about January 22, 2010, Garry Toups suffered a broken leg while operating an offroad dirt bike on a motorcross track in Mississippi.

- According to Mr. Toups, he was making a jump over what is called a "table top" when his foot came off the foot peg and hit the ground.

- Mr. Toups subsequently sought medical treatment for his injuries, and he filed a claim under the Moreno Plan for payment of expenses associated with this treatment.

- Because orthopaedic services where involved, SBS sent the plaintiffs a subrogation agreement in order to gather more information about the incident and to determine if Mr. Toups's medical treatment was covered under the Moreno Plan.

- In response, Mr. Toups stated he was riding a dirt bike, jumped a hill, and his foot came off the bike and hit the ground.

- Since the first response was not signed by Mr. Toups, SBS then sent another subrogation agreement to the plaintiffs.

- In the second response, Mr. Toups provided a letter to SBS in which he stated that he was riding a dirt bike on a motorcross track in Mississippi and making a jump over a "table top" when his foot hit the ground.

- Upon learning that Mr. Toups had been injured in an off-road dirt bike incident while attempting a jump over a "table top," SBS and Moreno Group denied Mr. Toups's claim for medical benefits based upon the "Hazardous Hobby or Activity" exclusion contained in the Moreno Plan.

- The Moreno Plan defines "Hazardous Hobby or Activity" as " . . . an activity which is characterized by constant threat of danger or risk of bodily injury. Examples of hazardous hobbies or activities are skydiving, auto racing, hang gliding, jet ski operating or bungee jumping."

Defendant Hines submitted the following undisputed facts in a previous motion:

- Hines entered into a Service Agreement ("Agreement") with Moreno effective December 1, 2008.

- Pursuant to the Agreement between Hines and Moreno, Hines provided utilization review and management services to the Moreno Plan.

- According to the Agreement, Moreno is charged with interpreting the Moreno Plan's coverage provisions and with paying health care claims.

- Pursuant to the Agreement, Hines performed medical necessity review for services and treatment recommended for Moreno Plan member Garry Toups ("Toups"), for services and treatment that were associated with the injuries Toups received in a motorcycle accident.

- On January 26, 2010, Hines sent correspondence to Toups, indicating that it recommended an original hospital confinement of two (2) days. This correspondence further indicated that Toups could assume his entire confinement was certified, unless he received notification from Hines of a non-certification decision.

- On January 28, 2010, Hines sent correspondence to Toups, indicating that it had

certified one (1) skilled nursing visit and one (1) skilled physical therapy visit.

- On January 29, 2010, Hines sent correspondence to Toups, indicating approval of additional nursing and physical therapy visits.

- On February 1, 2010, Hines sent correspondence to Toups, notifying him of approval of nine (9) additional nursing visits, for a total of fourteen (14) visits.

- On March 1, 2010, Hines sent correspondence to Toups, notifying him of approval of eleven (11) additional visits for a total of twenty-five (25) skilled home nursing visits.

- On March 22, 2010, Hines sent correspondence to Toups, indicating that his surgical procedure to be performed on March 26, 2010, had been reviewed and certified.

- On July 7, 2010, Hines sent correspondence to Toups, indicating that the surgical procedure to be performed on July 9, 2010, had been reviewed and certified.

- On April 20, 2010, Hines sent correspondence to Toups, indicating that it was certifying the purchase of durable medical equipment for his use.

- On each correspondence that Hines sent to Toups certifying medical treatment or goods, Toups was informed that certification of medical necessity did not guarantee coverage under a health plan, as follows:

  *This certification is not a guarantee that benefits will be paid under the health care plan. All benefit determinations are subject to eligibility at the time of service and all terms and provisions of the plan document or policy. Please contact the claim payor directly to verify benefits, especially as they relate to eligibility;, possible out-of-network penalties, off-label medication used, off label use of devices, investigational treatment, participation in Phase I, II or III Clinical Trials, waiver of specific exclusions or pre-existing clauses in the plan.*

- Hines never indicated to either Michele Toups or Garry Toups that certification of medical necessity for any medical treatment, service, or product was a guaranty that the Plan would ultimately pay for that treatment, service, or product.

The plaintiffs argue after Hines certified certain medical services and products, the "defendants initially paid some of Garry's medical expenses." However, plaintiffs argue "defendants" unilaterally and retroactively excluded Toup's injury from coverage.

Plaintiffs filed suit on or around July 22, 2011 in the Fifteenth Judicial District Court for the Parish of Lafayette, Louisiana. Defendant Moreno Group removed the matter to this Court on or around August 25, 2011. The subject motions were filed thereafter and are now considered ripe for review.

## II.     Law and Analysis

### A.     Summary Judgment Standard

As an initial matter, this Court notes although it is this Court's usual practice to address ERISA cases on a trial-by-briefs basis – as the evidence that is considered by the Court is typically limited to the administrative record only – it is, nevertheless, at times, also appropriate to consider the issues in an ERISA case on a summary judgment basis. In such cases, the usual summary judgment rules control. *See, e.g., Barhan v. Ry-Ron, Inc.*, 121 F.3d 198, 202-03 (5th Cir. 1997) (summary judgment is an appropriate procedural vehicle for the administrator to use in obtaining a resolution of the plan beneficiary's suit; once the motion for summary judgment is filed, the usual summary judgment rules control).

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. Proc. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Proc. 56(c). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may give an opportunity to properly support or address the fact; consider the fact undisputed for purposes of the motion; grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or issue any other appropriate order. Fed. R. Civ. Proc. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

This Court notes, effective December 1, 2010, Rule 56 was amended.  The amended Rule 56 contains no substantive change to the summary judgment standard.  Summary judgment remains appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  This Court must view all evidence in a light most favorable to the non-movant. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d

253, 261 (5th Cir. 2007). However, in arguing that a genuine issue of material fact exists that precludes summary judgment, the non-movant must identify specific evidence in the record to support its position. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994). The non-movant cannot preclude summary judgment by raising "some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (internal citations and quotation marks omitted).

> The Supreme Court has stated:

> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

> The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little*, 37 F.3d at 1075.

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

**B.      Moreno's Motion for Summary Judgment [Doc. 58]**

**1.      ERISA Preemption**

In their outline, plaintiffs allege breach of contract and detrimental reliance claims against Moreno, seeking, as damages, "the [a]mount of medical benefits denied, plus interest," and with respect to the breach of contract claim, "attorney's fees pursuant to statute."[6]

This Court has already determined Moreno is the Plan Administrator of the Moreno Plan.[7]

---

[6] Plaintiffs argue their breach of contract claims "is viable under both ERISA and state law, and its claim for attorneys fees arises under ERISA, 29 U.S.C 1132(g)(1)." The claim for detrimental reliance appears to be grounded in Louisiana state law.

[7] Of interest, the Moreno Plan Document identifies the "Claims Administrator" for the Moreno Plan as SBS. *See* section of Plan Document entitled "General Plan Information," which states:

> Claims Administrator:
> Southern Benefits Services, LLC
> 2400 Veterans Blvd Suite 140
> Kenner, Louisiana   70062
> (504) 323-7500

at D-0067.

According to the Moreno Plan documents, the section of the Moreno Plan Documents addressing the "claims administrator" appears in the listing of duties of the Plan Administrator, one of which is "[t]o appoint a Claims Administrator to pay claims." However, the Moreno Plan Document also states '**[a] Claims Administrator is not a fiduciary under the Plan by virtue of paying claims in accordance with the Plan's rules as established by the Plan Administrator.**" (emphasis added).

-10-

The Moreno Plan Document further states the following:

> **Moreno Group, LLC Employee Benefit Plan is the benefit plan of the Moreno Group, LLC, the Plan Administrator, also called the Plan Sponsor.** It is to be administered by the Plan Administrator in accordance with the provisions of ERISA. An individual may be appointed by Moreno Group, LLC to be Plan Administrator and serve at the convenience of the Employer. If the Plan Administrator resigns, dies or is otherwise removed from the position, Moreno Group, LLC shall appoint a new Plan Administrator as soon as reasonably possible.
>
> The Plan Administrator shall administer this Plan in accordance with its terms and establish its policies, interpretations, practices, and procedures. **It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the plan.** The decisions of the Plan Administrator will be final and binding on all interested parties.[8]

Thus, according to the clear language in the Plan Document, Moreno is the Plan Administrator for the Moreno Plan, and is vested with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the Moreno Plan. Although the parties have not provided this Court with detailed information breaking down the division of duties with respect to claims for benefits, the record submitted by the parties shows that while SBS actually receives, processes, and schedules payments for submitted claims that are compensable according to the Moreno Plan, as the plan fiduciary, Moreno has the final say in the payment and denial of claims.

Moreno argues plaintiffs' state law claims for breach of contract and detrimental reliance are preempted by ERISA. ERISA's preemption clause, 29 U.S.C. § 1144(a), states with certain exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...."

---

[8] *See* Plan Document at D-0062 (emphasis added).

The Fifth Circuit discussed ERISA preemption in *Bank of Louisiana v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241-42 (5th Cir. 2006):

> The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'" The Court has held that a state law "relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" Simultaneously, however, the Court recognizes that, given its broadest reading, the phrase "relate to" would encompass virtually all state law, and that its "connection with" and "reference to" interpretations are "scarcely more restrictive." The Court has, therefore, declined to apply an "uncritical literalism" to the phrase and instead takes the "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans."
>
> Congress's objectives in enacting ERISA were to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies, sanctions, and ready access to the Federal courts. 29 U.S.C. § 1001(b). To this end, ERISA's preemption provision is intended "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." A uniform administrative scheme serves to minimize administrative and financial burdens by avoiding the need to tailor plans to the peculiarities of the law of each state.
>
> In light of these statutory objectives, this court applies a two-prong test to the defense of ERISA preemption. A defendant pleading preemption must prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." Because ERISA preemption is an affirmative defense, Aetna bears the burden of proof on both elements.

(internal citations omitted). *See also Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir. 1989) (common-law contract and tort claims based upon laws of general application, that is, not specifically related to insurance . . . or employee severance . . . . or discrimination . . . . are preempted by ERISA . . . . to the extent that they relate to an employee benefit plan. Moreover, when beneficiaries bring such claims to recover benefits from a covered plan, those claims fall under

-12-

ERISA's 29 U.S.C. § 1132(a)(1)(B)[9] . . . . which provides an exclusive federal cause of action for the resolution of such claims.").

In the instant case, this Court finds it undisputed that the nature of the plaintiffs' claims for breach of contract and detrimental reliance is that Moreno did not properly process and pay plaintiff Garry Toups's claim for medical benefits; indeed, the relief sought in the plaintiffs' complaint is the recovery of those benefits. Both claims address an area of exclusive federal concern – *i.e.*, the right to receive benefits under the terms of the Moreno Plan – and both claims directly affect the relationship among traditional ERISA entities – Moreno, the employer and Plan Administrator, and its employee's husband, a Plan participant and beneficiary. Indeed, the only remedy requested by the plaintiffs against Moreno is the recovery of the benefits the plaintiffs argue are due and owing. As such, the plaintiffs' claim to recover benefits – couched as claims for breach of contract and detrimental reliance – is preempted by ERISA.

### 2.    Claim addressed under ERISA

It is well-settled that in enacting ERISA, Congress created a comprehensive civil-enforcement scheme for employee welfare benefit plans that completely preempts any state-law cause of action that "duplicates, supplements, or supplants" an ERISA remedy. *Lone Star OB/GYN Assoc. v. Aetna Health, Inc.*, 579 F.3d 525, 529 (5th Cir. 2009), *citing Aetna Health Inc. v. Davila*,

---

[9] 29 U.S.C. § 1132(a)(1)(B) states:

A civil action may be brought --

   (1) by a participant or a beneficiary-

      * * *

      (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

-13-

542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). The Fifth Circuit has stated that complete preemption converts a state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions into "one stating a federal claim for purposes of the well-pleaded complaint rule." *Davila*, 542 U.S. at 209, *quoting Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In other words, even if the plaintiff did not plead a federal cause of action on the face of the complaint, the claim is "'necessarily federal in character'" if it implicates ERISA's civil enforcement scheme. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336-37 (5th Cir. 1999), *quoting Taylor*, 481 U.S. at 64-65.

Considering the foregoing, notwithstanding how the plaintiffs' claim for benefits is pled against Moreno in either the plaintiffs' complaint or their outline, the claim for benefits against Moreno is an ERISA claim and must be analyzed as such by this Court.

"ERISA provides federal courts with jurisdiction to review benefit determinations by *fiduciaries* or plan administrators." *Estate of Bratton v. National Union Fire Insurance Company of Pittsburgh, PA*, 215 F.3d 516, 521-22 (5th Cir. 2000). "[A] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 521. "When an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Id.* at 521 n.4.

In the case at bar, the employee welfare benefit plan at issue provides for both a "Plan" Administrator (Moreno) and a "Claims" Administrator (Southern Benefit Services).[10] The Plan

---

[10] *See* "Plan Document and Summary Plan Description for Moreno Group, LLC PPO Employee Benefit Plan Effective January 1, 2009," D-0067, attached to exhibit to Moreno's Response to ERISA Case Order, Doc. 50, at D-0067. 29 U.S.C. §§1102 and 1105 authorize the separation and delegation of responsibilities among plan

-14-

documents also grant to Moreno, as Plan Administrator, the maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan; to make determinations regarding issues which relate to eligibility for benefits; to decide disputes which may arise relative to a Plan Participant's rights; and to decide questions of Plan interpretation and those of fact relating to the Plan."[11] Thus, while at appears SBS was retained by Moreno to handle the day-to-day administration of claims, such as the receipt and processing of claims, and the payment of routine claims, Moreno

---

fiduciaries.

    (a) Named fiduciaries

        **(1)** Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

        **(2)** For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

    (b) Requisite features of plan

    Every employee benefit plan shall--

        **(1)** provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter,

        **(2)** describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in section 1105(c)(1) of this title),

29 U.S.C. §1102.

    Additionally, Section 1105(c)(1) provides for "[a]llocation of fiduciary responsibility; designated persons to carry out fiduciary responsibilities," as follows:

    **(1)** The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

29 U.S.C. §1105.

    [11] See Plan Document at D-0062.

alone retained the discretion regarding whether to ultimately pay a claim and, as such, was the named fiduciary under the Plan. Therefore, the language of the Plan is clear Moreno was given full discretion to interpret the Plan, find the facts applicable to specific claims for benefits, and otherwise administer the plan within its discretion.  In view of the unambiguous language of the Plan, this Court will apply the abuse of discretion standard in reviewing Moreno's decision.

The Fifth Circuit has described the nature of the abuse of discretion review. "When applying the abuse of discretion standard, 'we analy[ze] whether the plan administrator acted arbitrarily or capriciously. A decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence. An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.'  We must find that '[w]ithout some *concrete evidence* in the administrative record that supports the denial of the claim, . . . the administrator abused its discretion.'"  *Lain v. Unum Life Insurance Company of America*, 279 F.3d 337, 342-43 (5th Cir. 2002) (citations omitted) (emphasis in original).

For review of Moreno's interpretation of the Plan, the Fifth Circuit has established a specific test.  The Fifth Circuit "applies a two-prong test when reviewing an administrator's denial of benefits. First, we determine the 'legally correct interpretation of the [policy].'  If it is found that the administrator failed to give the plan 'the legally correct interpretation, [the Court must] then determine whether the administrator's decision was an abuse of discretion.'"  *Lain*, 279 F.3d at 342-44. As to the first prong of the test, "[i]n ascertaining the legally correct interpretation of the policy, we must consider (1) whether a uniform construction of the policy has been given by the administrator, (2) whether the interpretation is fair and reasonable, and (3) whether unanticipated

costs will result from a different interpretation of the policy." *Id.* at 344.  If the Plan Administrator's

interpretation of the policy is legally correct, "the inquiry ends because no abuse of discretion could

have occurred." *Chacko v. Sabre, Inc.*, 473 F.3d 604, 611 (5th Cir. 2006).  But if the court concludes

that the administrator has not given the plan legally correct interpretation, the court must then

determine whether the administrator's interpretation constitutes an abuse of discretion.  *McCall v.

Burlington Northern.Santa Fe Co.*, 237 F.3d 506, 511 (5th Cir. 2000), *citing Rhorer v. Raytheon

Eng'rs and Const'rs, Inc.*, 181 F.3d 634, 639 (5th Cir.1999).  A decision is not an abuse of discretion

if a reasonable person could have reached a similar decision, given the evidence before him.

*McCall*, 237 F.3d at 511, *citing Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th

Cir.1997).

The portion of the policy at the center of the parties' dispute is the following exclusion:

### PLAN EXCLUSIONS

For all Medical Benefits shown in the Schedule of Benefits, a charge for the
following is not covered:

************

**(15) Hazardous Hobby or Activity.**  Care and treatment of an Injury or Sickness
that results from engaging in a Hazardous Activity.  A hobby or activity is hazardous
if it is an activity which is characterized by a constant threat of danger or risk of
bodily injury.  Examples of hazardous hobbies or activities are skydiving, auto
racing, hand gliding, jet ski operating or bungee jumping.[12]

In the instant case, it is undisputed that Garry Toups submitted the following information

describing the nature of the accident that caused his injury:

I Garry Toups was riding my Dirt Bike on a motocross track in Mississippi on
January 22, 2010.  I was making a jump over what is called a table top and when I

---

[12] *See* Plan Document at D-0037.

landed my foot came off of my foot peg and hit the ground.  I did not fall off of the dirt bike.  I made the turn to get out of the way of on coming riders and that is when I realized I did break my leg.  No other people were involved.[13]

The administrative record contains the following email communications between Wendy Gonzales, a claims analyst with Southern Benefit Services, to Keisha M. DeRouen, an insurance specialist,[14] on July 26, 2010:

Hi, we have received high dollar claims on Garry Toups and denied for injury information.  Attached is what we have received from this member.  He was racing his dirt bike at a motorcross [sic] track.  This is considered a hazardous hobby and not covered under the Plan however I wanted to pass it by you and let you review it before we do deny it as not covered.

Please see attached.[15]

Ms. DeRouen responds as follows: "Go ahead and deny claims as according to our plan document."[16]

This Court concludes Moreno's conclusion that dirt bike racing on a motocross track is a hazardous hobby is fair and reasonable.  First, the Court notes the list of hazardous activities included in the Moreno Plan documents is not exclusive, but is illustrative only.  Second, given that auto racing is included in the list of dangerous activities, this Court, without having any detailed knowledge of what is involved in racing a dirt bike on a "motocross track," concludes the racing of

---

[13] This document is contained within the administrative record submitted by the parties, however, it is not Bates stamped.  The document appears as page 32 of 208 pages attached to Doc. 35 in the record.

[14] *See* Doc. 35-2, page 46.  The documentation provided by Moreno indicates that Ms. DeRouen is an insurance specialist with "Dynamic Industries, Inc."  Moreno does not explain anywhere in its briefing the role of Dynamic Industries, Inc. in this litigation, however, the parties do not dispute that the July 26, 2010 email from Ms. DeRouen to Ms. Capo denying coverage depicts "the full extent of Moreno's action in this matter," as expressly alleged by Moreno.  Considering the foregoing, the identity of Dynamic Industries, Inc. is unimportant for purposes of Moreno's motion.

[15] *Id.*

[16] *Id.*

a "dirt bike" on a "dirt track," in which the riders are required to "jump" their bikes, is reasonably included in the Plan's list of hazardous activities. Indeed, the list of examples of hazardous activities includes other activities such as auto racing, skydiving, hang gliding, jet ski operating, and bungee jumping. Based on the other activities included in the list of hazardous activities within the Plan documents, this Court concludes it was not unreasonable for Moreno to conclude the activity engaged in by Mr. Toups at the time of his injury was "an activity which is characterized by a constant threat of danger or risk of bodily injury."

Considering the foregoing, this Court concludes Moreno properly interpreted the policy. Because Moreno properly interpreted the policy and denied Mr. Toups's claim on the basis that his injury was caused by an excluded activity, this Court need not inquire further into Moreno's denial of Mr. Toups's claim. Accordingly, this Court concludes Moreno did not abuse its discretion in denying Mr. Toups's claim under the hazardous activity exclusion of the Moreno Plan.

Considering the foregoing, Moreno's motion for summary judgment [Doc. 58] is GRANTED, and the plaintiffs' claim against Moreno, seeking recovery of "the amount of benefits denied, plus interest," is DENIED.

### C.   Motion For Summary Judgment filed by Hines & Associates [Doc. 56]

Hines moves for "summary judgment based on plaintiffs' outline of claims" on grounds that, as the contracted utilization review agent of Moreno, Hines had no involvement in or responsibility for the denial of the claim for benefits which is the subject of the plaintiffs' lawsuit. Therefore, Hines argues it has no liability under ERISA and seeks a ruling of this Court dismissing all of plaintiffs' claims against it with prejudice.

Although not defined by the parties as such in this litigation, as a general matter,

"[u]tilization review refers to 'external evaluations that are based on established clinical criteria and are conducted by third-party payors, purchasers, or health care organizers to evaluate the appropriateness of an episode, or series of episodes, of medical care.'". *See* Blum, An Analysis of Legal Liability in Health Care Utilization Review and Case Management, 26 Hous.L.Rev. 191, 192-93 (1989).  In other words, Hines reviews medical files and guidelines for treatment for healthcare payors with which it contracts to determine whether medical services are medically necessary prior to the treatment being provided.

Hines is unable to articulate in its motion precisely which claims it seeks to have dismissed by the Court, because, despite being ordered to do so, the plaintiffs have not complied with this Court's order to specifically set out their claims against Hines in outline form.  As a result, it is far from clear what claims the plaintiffs are alleging against Hines.  Indeed, in the outline the plaintiffs submitted, the plaintiffs simply do not include any claims against Hines.  The foregoing would appear to evidence a desire to abandon all claims against Hines, as plaintiffs were warned a failure to include claims against a party in their outline would result in a waiver of those claims, and would also appear to make it difficult for this Court to adjudicate Hines's motion.  However, in response to Hines's motion, the plaintiffs appear to argue that they do, in fact, assert a claim against Hines for detrimental reliance.  The fact that Hines appears to single out only one claim against Hines in its opposition brief, along with this Court's belief that nowhere in the pleadings or their outline does Hines allege a cognizable claim against Hines, guides this Court in making the following rulings.

### 1.    State Law Claims Preempted by ERISA

First, to the extent the plaintiffs assert a state law claim for detrimental reliance – or even a claim for breach of contract, as that claim was also alleged by plaintiffs against Moreno – this Court

expressly finds such claims were not included in the plaintiffs' outline.  However, even if this Court were to consider such claim, this Court would find the claims are preempted by ERISA, for the same reasons discussed above.

> **2.    Even if detrimental reliance claim were not preempted, claim has no merit**

Second, even if this Court were to find the plaintiffs' allege a claim for detrimental reliance against Hines (which Hines specifically argues in response to Hines's motion), and even if this Court were to conclude such claim is not preempted, this Court would nevertheless conclude such claim has no merit.

In their response to Hines's motion, the plaintiffs argue they have alleged an "independent legal duty, *i.e.*, the theory of detrimental reliance," against Hines, arguing their claim for detrimental reliance is "textbook," in that "Hines led [the plaintiffs] to believe that their medical expenses would be paid; [plaintiffs'] relied on that belief (by submitting to medical care, and not seeking a second opinion or other means of medical coverage for the necessary medical care); and [plaintiffs] have incurred damages as the result."[17]

Under Louisiana law, in order to prove a claim of detrimental reliance, a plaintiff must prove the following: (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance.  *Breaux v. Schlumberger Offshore Serv., Div. Of Schlumberger, Ltd.*, 817 F.2d 1226, 1230 (5th Cir. 1987), *citing John Bailey Contractor, Inc. v. State*, 425 So.2d 326, 328 (La. App. 3rd Cir. 1982), *aff'd*, 439 So.2d 1055 (La.1983).  It is well-settled that it is difficult to recover under the theory of detrimental reliance,

---

[17] *See* plaintiffs' opposition to Hines's motion for summary judgment, Doc. 62, at pp. 3-4.

because such a claim is not favored in Louisiana. *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007), *citing May v. Harris Management Corp.*, 928 So.2d 140, 145 (La. App. 1st Cir. 2005) ; *Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La.1975); *Barnett v. Bd. of Tr. for State Coll. & Univs.*, 809 So.2d 184, 189 (La. App. 1st Cir. 2001). Detrimental reliance claims must be examined carefully and strictly. *May*, 928 So.2d at 145, *citing Kibbe v. Lege*, 604 So.2d 1366, 1370 (La. App. 3rd Cir. 1992). The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. *Id.*, *citing Suire v. Lafayette City–Parish Consol. Government*, 907 So.2d 37, 58–59 (La. 2005).

After a review of the record in this case, this Court concludes plaintiffs cannot establish a cognizable detrimental reliance claim against Hines, *because Hines made no representation to plaintiffs with regard to benefits.* Rather, the role of Hines was to certify the *medical necessity of certain medical procedures* recommended by Mr. Toups's treating physicians. In this role, Hines pre-certified an original hospital confinement of two (2) days; surgical procedures; the use of certain durable medical equipment; and skilled nursing and physical therapy visits. On each correspondence that Hines sent to Toups certifying medical treatment or goods, Mr. Toups was informed that certification of medical necessity did not guarantee coverage under a health plan, as follows:

> **This certification is not a guarantee that benefits will be paid under the health care plan. All benefit determinations are subject to eligibility at the time of service and all terms and provisions of the plan document or policy. Please contact the claim payor directly to verify benefits, especially as they relate to eligibility, possible out-of-network penalties, off-label medication used, off label use of devices, investigational treatment, participation in Phase I, II or III Clinical Trials, waiver of**

specific exclusions or pre-existing clauses in the plan.[18]

The plaintiffs do not dispute that the foregoing language was contained within every communication they received from Hines. Moreover, the plaintiffs do not allege Hines improperly certified medical treatment or refused to certify medical treatment that was necessary as a basis for any of their claims. Indeed, it is unclear whether the plaintiffs seek a recovery of benefits from Hines at all, given their failure to set forth their claims against Hines under ERISA with specificity.

Yet, in their response to Hines's motion, the plaintiffs argue Hines's reliance on the benefits "disclaimer" language contained within Hines's communications to the plaintiffs is "cynical," arguing that all of the letters certifying medical treatment came after the plaintiffs would have already taken action based upon Hines's earlier representations that the medical treatment was necessary. For example, the plaintiffs argue that Mr. Toups was admitted to the hospital on January 23, 2010, but Hines's letter certifying the admittance is dated January 26, 2010 and would not have been mailed to plaintiffs until several days after that. The plaintiffs also place huge importance on the inclusion of a typographical error with respect to a date in one of the letters sent by Hines to the plaintiffs, arguing "these letter [sic] contained error, but Hines would have this Court read every inference in its favor."[19]

The Court fails to discern the importance or relevance of the plaintiffs' arguments to the issue of the potential liability of Hines for the alleged failure of the plaintiffs to recover benefits to which they argue they are entitled, but recognizes the emotional frustration at play. However, the law, not emotion, must prevail. Indeed, the role of Hines was not to consider the plaintiffs' entitlement to

---

[18] *See* Doc. 62, attached as Exhibit "A."

[19] *See* plaintiffs' opposition to Hines's motion for summary judgment, Doc. 62 at p. 6.

benefits at all, but rather to determine the necessity of certain medical treatments, services, and products. In this regard, Hines contracted with Moreno – not with the plaintiffs – to provide utilization review services. Moreno made no decisions with respect to benefits, and made no representation to the plaintiffs that it did so. In fact, the plaintiffs were specifically cautioned that questions regarding benefits were properly directed to the Plan, and that pre-certification for medical procedures did not guarantee benefits. Under these circumstances, this Court concludes the plaintiffs fail to establish a claim for detrimental reliance under Louisiana law against Hines.

### 3.    Plaintiffs have no claim against Hines for recovery of benefits

In their outline of claims, the only remedy requested by the plaintiffs is the recovery of benefits they allege are due and owing under the Plan. Again, it is not clear whether the plaintiffs allege a claim for recovery of benefits against Hines, however, out of an abundance of caution, the Court will consider such a claim.

ERISA allows a claimant to bring a lawsuit under 29 U.S.C. § 1132(a)(1)(B) "to recover benefits due to him under the terms of his plan." *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir.1998). Hines argues only the Plan itself can be a defendant in such a lawsuit, citing as authority a 2008 district court case from the Eastern District of Louisiana[20] that discussed the split in the circuits over the issue of whether liability for benefits can extend to a third party administrator, or whether only the Plan itself may be sued to recover benefits.[21] In *LifeCare Mgmt Serv., LLC v.*

---

[20] *See* Powell v. Eustis Eng'g Co., 2003 WL 22533650, at *2 (E.D.La. Nov. 6, 2003) (finding that "district courts in this circuit have agreed with the Ninth Circuit that the Plan is the only proper defendant in a suit to recover benefits").

[21] Until the decision in *LifeCare Mgmt Serv., LLC v. Ins. Mgmt Adm'rs, Inc.*, 703 F.3d 835 (5th Cir. 2013), the Fifth Circuit had never directly addressed the question of whether the only proper defendant in a suit to recover benefits under §1132(a)(1)(B) is the plan itself. In *LifeCare Mgmt*, the court noted:

*Ins. Mgmt Adm'rs, Inc.*, 703 F.3d 835 (5th Cir. 2013), the Fifth Circuit answered the question, holding entities other than the Plan itself may, in fact, be sued in an ERISA case for recovery of benefits.  In so holding, however, the Fifth Circuit was careful to note a third party administrator that is not the Plan itself may only be held liable **if it exercises "actual control" over the benefits claims process:**

> We agree that "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan" and that "[i]f an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits."  Neither the statute nor caselaw directs that §1132(a)(1)(B) should insulate an entity from liability merely for being a TPA. *Where a TPA exercises control over a plan's benefits claims process, and exerts that control to deny a claim by incorrectly interpreting a plan in a way that amounts to an abuse of discretion, liability may attach.*

703 F.3d at 844-45 (internal citations omitted) (emphasis added).

In the instant case, Hines argues it is a company that specializes in utilization review or management, and, as such, reviews medical files and guidelines for treatment for healthcare payors

---

District courts in our circuit interpreting § 1132(a)(1)(B) have split in extending liability to entities other than the plan or employer plan administrators, but more recent decisions favor finding that liability may attach. See Bernstein, 2006 WL 2329385, at *7 ("In light of ... the plain text of ERISA, and the abundance of circuit authority authorizing such suits, the Court holds that a claim under § 1132(a)(1)(B) is not per se limited to plan defendants."); Laura Franklin v. AT & T Corp., No. 3:08–CV–1031–M, 2008 WL 5156687, at *3 (N.D.Tex. Dec. 9, 2008) (finding that a TPA with "substantial, if not total, responsibility in evaluating what benefits were payable under the Plan" could be held liable); Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc., No. H–09–0646, 2010 WL 565283, at *3–4 (S.D.Tex. Feb. 17, 2010) (finding that a TPA was a proper ERISA defendant). This may be because many of the older district court decisions relied on the Ninth Circuit's holding in Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1324 (9th Cir.1985) ( per curiam ) that "ERISA permits suits to recover benefits only against the plan as an entity." See Powell v. Eustis Eng'g Co., No. Civ.A. 02–1259, 2003 WL 22533650, at *2 (E.D.La. Nov. 6, 2003) (finding that "district courts in this circuit have agreed with the Ninth Circuit [in Gelardi ] that the Plan is the only proper defendant in a suit to recover benefits"). However, the Ninth Circuit's recent en banc holding in Cyr, discussed above, overruled Gelardi, finding that "potential liability under 29 U.S.C. § 1132(a)(1)(B) is not limited to a benefits plan or the plan administrator." Cyr, 642 F.3d at 1206–07.

703 F.3d at 844, n.9.

with which it contracts to determine whether medical services are medically necessary prior to the

treatment being provided.  Pursuant to a Services Agreement executed by Hines and Moreno, Hines

was retained to perform utilization review for the Moreno Plan.  Hines argues it does not make

recommendations regarding whether a claim is a covered benefit under a particular health plan,

pursuant to the express terms of the contract between Moreno and Hines, as follows:

> 2.    Scope of Service.  Hines agrees that for the term of this Agreement as set
> forth in Section 3 hereof, it will provide to THE GROUP the SERVICES
> outlined in Exhibit 2 with respect to medical care proposed for eligible
> members of THE GROUP and for their eligible dependents (hereinafter
> collectively referred to as "Covered Persons"), covered under the health
> benefit programs established and maintained by THE GROUP.  Covered
> Persons whose primary coverage is to be provided by another health program,
> Medicare or Workers' Compensation will not be included in the category of
> Covered Persons for which SERVICES are performed.
>
> THE GROUP will interpret the benefit plan, maintain a list of eligible employees and
> dependants, as well as pay the Health Care claims.
>
> **HINES will make recommendations to THE GROUP on the medical necessity
> and/or appropriateness of Health Care SERVICES provided or proposed to be
> provided as defined and in accordance with those SERVICES that require
> precertification as listed on Exhibit 2.  HINES and THE GROUP agree that
> only THE GROUP will make the final determination as to payment or the
> denial of payment of any claim and/or authorization for delivery of any Health
> are SERVICES.**[22]

Additionally, Hines argues that in correspondence dated January 26, 2010, January 28, 2010,

January 29, 2010, February 1, 2010, March 1, 2010, March 22, 2010, April 20, 2010, and July 7,

2010, it specifically notified the plaintiffs that Hines's certification of medical necessity for certain

---

[22] *See* Service Agreement executed by Moreno Group and Hines, attached as Exhibit "A" to Hines's
previously-filed motion for summary judgment, Doc. 25 (emphasis added).

medical procedures and items did not guarantee benefits would be paid under their health plan.[23]

Based upon a review of the administrative record in this case, and noting an absence of facts to contradict the Plan language, it is clear Hines did not "control administration of the Plan" or "take[] on the responsibilities of an administrator." Moreover, Hines did not "exercise[] control over [the Moreno Plan's] benefits claims process," or exert control to deny the plaintiff's claim. Hines merely provided the services of medical professionals to certify whether requested medical services were necessary, and the plaintiffs are not alleging that medical services that should have been certified were not certified, or that medical services were improperly provided. Additionally, at all times, Hines informed the plaintiffs that the services they provided did not guarantee the payment of benefits under the Plan. Under these circumstances, this Court concludes Hines is not liable to the plaintiffs' under ERISA for a recovery of benefits under the Moreno Plan.[24]

### 4.       Plaintiffs have no claim against Hines for breach of fiduciary duty

It is unclear to this Court whether the plaintiffs actually allege a breach of fiduciary duty claim against Hines. In their state court complaint, the plaintiffs allege the following:

> In the alternative, Defendants have acted negligently, and/or breached their fiduciary duty to Plaintiffs, and have caused the Plaintiffs to detrimentally rely upon the Defendants' representations, in the handling of Plaintiffs' claim by failing to follow proper procedures in evaluating and adjusting the Plaintiffs' claim.[25]

---

[23] *See* correspondence from Hines to plaintiffs on the foregoing dates, attached as Exhibits "B" - "I," attached to Hines's previously-filed motion for summary judgment, Doc. 25.

[24] Plaintiffs argue Hines's motion is "entirely predicated" on the affidavit of Eileen Zurblis, Executive Vice-President for Hines, which affidavit is factually contradicted by plaintiffs. Therefore, plaintiffs argue Hines's motion for summary judgment is conracted in fact and cannot be granted. However, this Court does not grant the motion on the basis of Mr. Zurblis's affidavit. Rather, this Court has considered other documentation contained in the administrative record in considering the potential liability of Hines, and concludes there is no genuine issue of material fact that Hines cannot be liable to the plaintiffs under the circumstances of this case.

[25] *See* Plaintiffs' Complaint, Doc. 1, ¶XXXVI.

Nevertheless, the plaintiffs failed to delineate *any* claims against Hines in their outline, which was ordered by this Court under penalty of waiver.

Notwithstanding the lack of clarity in the plaintiffs' pleadings, the Fifth Circuit has held "[w]hen a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to §502(a)(3)." *LifeCare Mgmt*, 703 F.3d at 846, *citing McCall v. Burlington N./Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir.2000).  This Court has already concluded any claim asserted by the plaintiffs against Hines for recovery of benefits under ERISA has no merit, as Hines had no discretionary authority under the Plan.  Furthermore, to the extent such a finding is necessary, this Court concludes any claim by the plaintiffs for breach of fiduciary duty against Hines would also lack merit, as Hines is not a fiduciary under the Moreno Plan.

ERISA defines the term "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The Supreme Court has noted:

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Pegram v. Herdrich*, 530 U.S. 211, 223, 120 S.Ct. 2143 (2000).

In the instant case, Hines clearly did not have any responsibilities with respect to the Plan itself. Rather, Hines certified the medical necessity of certain medical treatment for those under the Plan, here, it would have been, arguably, Mr. Toups. Clearly, the determinations of whether specific medical treatments were necessary were determinations that were separate and independent from determinations of whether benefits were covered under the Plan. *Benefits determinations* were made by SBS and, ultimately, Moreno as the final arbiter of benefits decisions. Hines simply decided whether certain medical treatments were necessary and could be provided. Under this scenario, this Court concludes Hines was not a fiduciary under the Moreno plan and cannot be liable for breach of fiduciary duty.

This Court does not conclude that a medical utilization company such as Hines can never be liable to a plan participant. However, this is not a case where the plaintiffs allege that medical treatments that were necessary were not certified by Hines or otherwise provided, or that medical care that was certified by Hines and ultimately provided was substandard. Rather, this is a case in which the plaintiffs argue for recovery of benefits from a company that had nothing to do with deciding whether benefits should be paid.

Considering the foregoing, Hines's Motion for Summary Judgment [Doc. 56] is GRANTED, and the claims asserted by the plaintiffs against Hines are DENIED AND DISMISSED WITH PREJUDICE.

### D.    Civil Conspiracy

Finally, although not pled anywhere in the record, either in the plaintiffs' complaint or anywhere in their outline, the Court addresses, for the sake of completeness of the record, the issue of civil conspiracy as it is alluded to by the plaintiffs. Throughout their pleadings and arguments,

the plaintiffs nebulously argue the "defendants" engaged in various activities to deprive them of benefits, despite the fact that the defendants in this case all had clearly defined roles and duties within (and without) the ERISA process.  To the extent the plaintiffs are attempting to argue a claim for civil conspiracy, which this Court specifically concludes has not adequately been pled, the Court would note the following.

First, the tort of civil conspiracy is governed under Louisiana law by Article 2324 of the Louisiana Civil Code, which does not, by itself, impose liability for a *civil conspiracy*.  Rather, the actionable element in a claim under this article is not the *conspiracy itself*, but the *tort* which the conspirators agreed to perpetrate and which they actually commit in whole or in part.  In order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury.  *See, e.g., Butz v. Lynch*, 710 So.2d 1171, 1174 (La. App. 1st Cir. 1998), *citing Silver v. Nelson*, 610 F.Supp. 505, 516-517 (E.D. La.1985).  Thus, under Louisiana law, *the plaintiff must establish that there was an agreement as to the intended outcome or result. Butz*, 710 So.2d at 1174, *citing Walker v. American Honda Motor Co., Inc.*, 640 So.2d 794, 797 (La. App. 3rd Cir. 1994), *writ denied*, (La. 1994).  In the instant case, the plaintiffs have alleged no agreement on the part of the defendants to perpetrate a tort, therefore, the claim of civil conspiracy would fail for this reason alone.

Second, it is highly likely a claim for civil conspiracy would be preempted by ERISA, for the reasons the state law claims for breach of contract and detrimental reliance are preempted in this case.  *See, e.g., Christopher v. Mobile Oil Corp.*, 950 F.2d 1209, 1220 (5th Cir. 1992); *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234 (5th Cir. 1995).

Considering the foregoing, to the extent the plaintiffs are attempting to allege the claim of civil conspiracy against the moving defendants, such claim has no merit.

## III.    Conclusion

For the foregoing reasons,

IT IS ORDERED that the Motion for Summary Judgment filed by Moreno Group [Doc. 58] is GRANTED, and all claims asserted by the plaintiffs against Moreno are DENIED AND DISMISSED WITH PREJUDICE.  IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Hines [Doc. 56] is GRANTED, and all claims asserted by the plaintiffs against Hines are DENIED AND DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____20_____ day of March, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE